FREEMANN LAW OFFICES
A PROFESSIONAL CORPORATION
Scott Bennett Freemann, Esq.
201 King of Prussia Road, Suite 650
Radnor, PA 19087
(215) 564-7400

EVIA LAW PLC
Steven Susser, Esq.
Jessica Fleetham, Esq.
*To seek pro hac vice admittance*
32400 Telegraph Road, Ste. 350
Bingham Farms, MI 48025
(248) 243-1201

Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

VERSAH LLC and HUWAIS IP
HOLDINGS LLC,

              Plaintiffs,

Civil No. _____

     v.

HIOSSEN INC. and OSSTEM
IMPLANT COMPANY, LTD.,

JURY TRIAL DEMANDED

              Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiffs Versah, LLC ("Versah") and Huwais IP Holdings LLC ("HIPH"),

by and through their attorneys, Freemann Law Offices A Professional Corporation

and Evia Law PLC, bring this Complaint against Defendants Hiossen Inc.

1

("Hiossen") and Osstem Implant Company, Ltd. ("Osstem"). Versah and HIPH allege as follows:

## PARTIES

1.    HIPH is a Michigan limited liability company located at 4645 Eagle Drive in Jackson MI, 49201.

2.    Versah is a Michigan limited liability company located at 2000 Spring Arbor Road, Suite D in Jackson, MI, 49203.

3.    Hiossen is a Pennsylvania company with headquarters at 270 Sylvan Avenue, Suite 1130, Englewood Cliffs, NJ 07632.

4.    Hiossen is, on information and belief, a subsidiary of Osstem.

5.    Osstem is a South Korean company with, on information and belief, headquarters at 3, Magokjungang 12-ro, Gangseo-gu, Seoul, Republic of Korea.

## JURISDICTION AND VENUE

6.    This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 1338(a).

7.    This Court has personal jurisdiction over Hiossen because it operates in Englewood, New Jersey.

8.    This Court has personal jurisdiction over Osstem because, on information and belief, Osstem is a foreign corporation that imports the accused products into the United States.

**VERSAH'S PATENTS IN SUIT**

9.      Versah was founded in April of 2014 by Dr. Salah Huwais ("Dr. Huwais"), a practicing Periodontist in Jackson, Michigan. Dr. Huwais created Versah to provide dental implant clinicians with an improved and unique way to prepare for osteotomies preliminary to a dental implant. The osteotomy is the cutting and reshaping of the bone, here, the jawbone, to prepare it to accept a dental implant.

10.     While placing implants over his many years of practice, Dr. Huwais consistently experienced the limitations using conventional drills, screw expanders and hammered osteotomes when preparing osteotomies. He observed that the traditional pre-implant osteotomy was either bad at preserving bone, or prone to overstressing the bone, or unnecessarily traumatic to the patient. He began looking for a new way to prepare the jawbone for dental implants that: A) preserved bone; B) could be easily controlled by the surgeon; and C) was less traumatic to patients. His goal was to maintain healthy bone rather than excavate it as some traditional osteotomies did, knowing that healthy bone would be better able to maintain the foundational strength of the bone so that it would be better able to support the dental implant.

11.    "Osseodensification," a term coined by Versah, is the procedure that led to the creation of Versah. The procedure is accomplished using the proprietary instruments Dr. Huwais invented and named the Densah® Bur Kit.

12.    The Densah® Burs are rotated at 800 – 1500 rpms and, when coupled with irrigation, hydro-dynamically densify bone through compaction autografting or Osseodensification. Stated another way, while others in the periodontics field were injuring the bone or the patients – Dr. Huwais rethought the entire procedure and arrived at a revolutionary way to preserve healthy dental bone and keep the patient comfortable.

13.    The result of the Densah® Burs is a consistently cylindrical, densified, and compacted osteotomy. Consistent osteotomies and densification are important to implant primary stability and to early loading. Indeed, Dr. Huwais's proprietary osseodensification was nothing less than a revolution in the dental implant field.

14.    At all relevant times, Plaintiffs have marked their Densah® Burs according to 35 U.S.C. §287.

15.    HIPH is the owner of various intellectual property rights, including patents as well as the registered trademark on which counts of this action are based. HIPH has granted an exclusive license in this intellectual property to BRRTech, LLC ("BRRTech").

4

16.    BRRTech in turn has granted a limited exclusive license for the dental field of use to Versah.

17.    In these licenses, HIPH retains rights in the licensed intellectual property rights.

18.    The license to Versah granted the right to Versah to bring suit against third parties for infringement of the licensed intellectual property.

19.    United States Patent number 9,022,783 ("the '783 patent") issued on May 5, 2015, and is titled Fluted Osteotome and Surgical Method for Use. A copy of the '783 patent is attached to this Complaint as Exhibit A.

20.    United States Patent number 9,526,593 ("the '593 patent") issued on December 27, 2016, and is titled Fluted Osteotome and Surgical Method for Use. A copy of the '593 patent is attached to this Complaint as Exhibit B.

21.    United States Patent number 9,028,253 ("the '253 patent") issued on May 12, 2015, and is titled Fluted Osteotome and Surgical Method for Use. A copy of the '253 patent is attached to this Complaint as Exhibit C.

22.    Collectively, the '783, '593,  and '253 patents will be referenced as the "patents in suit."

**HIOSSEN AND OSSTEM INFRINGEMENT**

23.    Hiossen offers to sell and sells a product called "Bone Compaction Kit."

5

24.    On information and belief, Hiossen manufactures the Bone Compaction Kit.

25.    On information and belief, Osstem manufactures the Bone Compaction Kit and imports that Kit into the United States.

26.    On information and belief, Hiossen is a wholly-owned subsidiary of Osstem. (Going forward, this Complaint will collectively reference Hiossen and Osstem as "Hiossen.")

27.    Here is an image of that Bone Compaction Kit:



https://eshop.hiossen.com/bone-compaction-kit/

28.    Versah and HIPH have analyzed the drill bits or burs used in the Bone Compaction Kit ("Infringing Burs") and determined that they infringe one or more claims of the patents in suit.

29.    None of HIPH, BRRTech, or Versah has given Hiossen permission to manufacture, use, sell, offer to sell, or import the Infringing Burs in the United States.

30.    On October 3, 2024, Versah's counsel sent a demand letter to Hiossen's counsel alleging patent infringement and asking that Hiossen cease infringement.

31.    On November 1, 2024, Hiossen's counsel responded to that letter by denying infringement and stating that Hiossen believed the patents in suit to be invalid.

## COUNT I – PATENT INFRINGEMENT – '783 PATENT

32.    Plaintiffs incorporate by reference the earlier paragraphs of Complaint.

33.    With knowledge of the '783 patent, Hiossen has induced and continues to induce infringement, both literally and/or under the doctrine of equivalents, of at least claim 15 of the '783 patent by making, using, offering for sale, importing, and/or selling the Infringing Burs to customers whose use of those Infringing Burs according to the instructions provided by Hiossen would constitute direct infringement. These acts are infringement under at least 35 U.S.C. § 271(b).

34.    The Infringing Burs when used as instructed by Hiossen meet each limitation of at least claim 15 of the '783 patent.

35.    Hiossen intended for its customers to infringe the '783 patent or was at least willfully blind to the existence of the '783 patent and/or the fact that its customers' use of the Infringing Burs would directly infringe the '783 patent.

36.    With knowledge of the '783 patent, Hiossen has contributed and continues to contribute, without license or authority, to the infringement, both literally and/or under the doctrine of equivalents, of at least claim 15 of the '783 patent by making, using, offering for sale, importing, and/or selling the Infringing Burs to customers whose use of those Infringing Burs according to the instructions provided by Hiossen would constitute direct infringement. These acts are infringement under at least 35 U.S.C. § 271(c).

37.    The Infringing Burs have no substantial, noninfringing uses because Hiossen only promotes the Infringing Burs for use by its customers in a manner that infringes the '783 patent.

38.    The Infringing Burs constitute a material part of the '783 patent invention for at least the reason that they are each advertised, sold, and/or offered for sale for use to specifically practice the method claimed in at least claim 15 of the '783 patent.

39.    Plaintiffs have suffered and will continue to suffer injury and damages for which they are entitled to relief under 35 U.S.C. § 284 adequate to compensate for Hiossen's infringement.

8

40.     As a direct and proximate consequence of this infringement, Plaintiffs have been harmed and will continue to be harmed unless the Court enjoins these infringing acts.

41.     On information and belief, Hiossen will continue to infringe the '783 patent unless the Court enjoins that infringement.

42.     Plaintiffs are entitled to injunctive relief under 35 U.S.C. § 283.

### COUNT II – PATENT INFRINGEMENT – '593 PATENT

43.     Plaintiffs incorporate by reference the earlier paragraphs of this Complaint.

44.     With knowledge of the '593 patent, Hiossen has induced and continues to induce infringement, both literally and/or under the doctrine of equivalents, of at least claim 4 of the '593 patent by making, using, offering for sale, importing, and/or selling the Infringing Burs to customers whose use of those Infringing Burs according to the instructions provided by Hiossen would constitute direct infringement. These acts are infringement under at least 35 U.S.C. § 271(b).

45.     The Infringing Burs when used as instructed by Hiossen meet each limitation of at least claim 4 of the '593 patent.

46.     Hiossen intended for its customers to infringe the '593 patent or was at least willfully blind to the existence of the '593 patent and/or the fact that its customers' use of the Infringing Burs would directly infringe the '593 patent.

47.    With knowledge of the '593 patent, Hiossen has contributed and continues to contribute, without license or authority, to the infringement, both literally and/or under the doctrine of equivalents, of at least claim 4 of the '593 patent by making, using, offering for sale, importing, and/or selling the Infringing Burs to customers whose use of those Infringing Burs according to the instructions provided by Hiossen would constitute direct infringement. These acts are infringement under at least 35 U.S.C. § 271(c).

48.    The Infringing Burs have no substantial, noninfringing uses because Hiossen only promotes the Infringing Burs for use by its customers in a manner that infringes the '593 patent.

49.    The Infringing Burs constitute a material part of the '593 patent invention for at least the reason that they are each advertised, sold, and/or offered for sale for use to specifically practice the method claimed in at least claim 4 of the '593 patent.

50.    Plaintiffs have suffered and will continue to suffer injury and damages for which they are entitled to relief under 35 U.S.C. § 284 adequate to compensate for Hiossen's infringement.

51.    As a direct and proximate consequence of this infringement, Plaintiffs have been harmed and will continue to be harmed unless the Court enjoins these infringing acts.

52.    On information and belief, Hiossen will continue to infringe the '593 patent unless the Court enjoins that infringement.

53.    Plaintiffs are entitled to injunctive relief under 35 U.S.C. § 283.

**COUNT III – PATENT INFRINGEMENT – '253 PATENT**

54.    Plaintiffs incorporate by reference the earlier paragraphs of this Complaint.

55.    With knowledge of the '253 patent, Hiossen has induced and continues to induce infringement, both literally and/or under the doctrine of equivalents, of at least claim 1 of the '253 patent by making, using, offering for sale, importing, and/or selling the Infringing Burs to customers whose use of those Infringing Burs according to the instructions provided by Hiossen would constitute direct infringement. These acts are infringement under at least 35 U.S.C. § 271(b).

56.    The Infringing Burs when used as instructed by Hiossen meet each limitation of at least claim 1 of the '253 patent.

57.    Hiossen intended for its customers to infringe the '253 patent or was at least willfully blind to the existence of the '253 patent and/or the fact that its customers' use of the Infringing Burs would directly infringe the '253 patent.

58.    With knowledge of the '253 patent, Hiossen has contributed and continues to contribute, without license or authority, to the infringement, both literally and/or under the doctrine of equivalents, of at least claim 1 of the '253

11

patent by making, using, offering for sale, importing, and/or selling the Infringing Burs to customers whose use of those Infringing Burs according to the instructions provided by Hiossen would constitute direct infringement. These acts are infringement under at least 35 U.S.C. § 271(c).

59.    The Infringing Burs have no substantial, noninfringing uses because Hiossen only promotes the Infringing Burs for use by its customers in a manner that infringes the '253 patent.

60.    The Infringing Burs constitute a material part of the '253 patent invention for at least the reason that they are each advertised, sold, and/or offered for sale for use to specifically practice the method claimed in at least claim 1 of the '253 patent.

61.    Plaintiffs have suffered and will continue to suffer injury and damages for which they are entitled to relief under 35 U.S.C. § 284 adequate to compensate for Hiossen's infringement.

62.    As a direct and proximate consequence of this infringement, Plaintiffs have been harmed and will continue to be harmed unless the Court enjoins these infringing acts.

63.    On information and belief, Hiossen will continue to infringe the '253 patent unless the Court enjoins that infringement.

64.    Plaintiffs are entitled to injunctive relief under 35 U.S.C. § 283.

## PRAYER FOR RELIEF

Plaintiffs ask this Court to enter judgment against Defendants and their officers, agents, servants, employees, and all persons in active concert or participation with them, granting the following relief:

A.    An adjudication that Hiossen and Osstem have infringed one or more claims of the patents in suit;

B.    the ascertainment of and award to Plaintiffs of damages from the infringement of one or more claims of the patents in suit, together with prejudgment and post-judgment interest and any other costs and expenses permitted by law, under 35 U.S.C. § 284;

C.    a finding that this case is exceptional and the award of reasonable attorneys' fees, costs, and expenses in this action to Plaintiffs under 35 U.S.C. § 285;

D.    permanently enjoining Hiossen and Osstem from any further acts of infringement of Plaintiffs' patent rights under 35 U.S.C. § 283; and,

E.    awarding to Plaintiffs such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial under Fed. R. Civ. P. 38(b) and 5(d).

Dated: November 15, 2024

Respectfully submitted,

FREEMANN LAW OFFICES
A PROFESSIONAL CORPORATION

s/ Scott Bennett Freemann
Scott Bennett Freemann, Esq.
201 King of Prussia Road, Suite 650
Radnor, PA 19087
(215) 564-7400

EVIA LAW PLC
Steven Susser, Esq.
Jessica Fleetham, Esq.
*To seek pro hac vice admittance*
32400 Telegraph Road, Ste. 350
Bingham Farms, MI 48025
(248) 243-1201

*Attorneys for Plaintiffs*

14